## UNITED STATES BANKRUPTCY COURT

### DISTRICT OF IDAHO

| | |
|---|---|
| IN RE:<br><br>COMERAN TILEH,<br>    Debtor. | Case No. 23-20267-BPH |
| IDAHO DEPARTMENT OF LABOR,<br>    Plaintiff,<br>vs.<br>COMERAN TILEH,<br>    Defendant. | Adv. No. 23-07008-BPH |

### MEMORANDUM OF DECISION

**INTRODUCTION**

Before the Court is a motion for summary judgment filed by the plaintiff, Idaho Department of Labor ("Plaintiff") against the defendant, Comeran Tileh ("Defendant") in this adversary proceeding by which Plaintiff seeks a determination that overpayments of unemployment benefits are nondischargeable in Defendant's bankruptcy case.

The Court heard oral argument on the motion on August 19, 2024, and thereafter took the matter under advisement. Upon consideration of the submissions and arguments of the parties as

MEMORANDUM OF OF DECISION - 1

well as the applicable law, the Court issues this memorandum decision which resolves the motion.  Rule 9014.[1]

**STANDARD ON SUMMARY JUDGMENT MOTIONS**

Summary judgment may be granted when no genuine and disputed issues of material fact exist, and, when viewing the evidence most favorably to the non-moving party, the movant is entitled to judgment as a matter of law. Civil Rule 56, incorporated by Rule 7056; *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); *Zetwick v. Cnty of Yolo*, 850 F.3d 436, 440 (9th Cir. 2017).  In resolving a motion for summary judgment, courts may not resolve genuine disputes of fact in favor of the party seeking summary judgment. *Zetwick*, 850 F.3d at 440.  Moreover, the court does not weigh the evidence; rather it determines only whether a material factual dispute remains for trial.  *Covey v. Hollydale Mobilehome Estates*, 116 F.3d 830, 834 (9th Cir. 1997).

An issue is "genuine" if there is sufficient evidence for a reasonable finder of fact to find in favor of the non-moving party, and a fact is "material" if it might affect the outcome of the case.  *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 992 (9th Cir. 2001) (citing *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248–49, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)).  Where evidence is genuinely disputed on a particular issue, such as by conflicting testimony, that issue is inappropriate for resolution on summary judgment.  *Direct Techs., LLC v. Elec. Arts, Inc.*, 836 F.3d 1059, 1067 (9th Cir. 2016).

In cases where intent is at issue, summary judgment is seldom granted; however, "summary judgment is appropriate if all reasonable inferences defeat the claims of one side, even

---

[1] Unless otherwise indicated, all statutory citations are to the Bankruptcy Code, Title 11 U.S.C. §§ 101–1532.  Additionally, all citations to "Rule" are to the Federal Rules of Bankruptcy Procedure and all citations to "Civil Rule" are to the Federal Rules of Civil Procedure.

MEMORANDUM OF OF DECISION - 2

when intent is at issue." *Gertsch v. Johnson & Johnson, Fin. Corp. (In re Gertsch)*, 237 B.R. 160, 165 (9th Cir. BAP 1999).  Summary judgment may be defeated by evidence "such that a reasonable juror drawing all inferences in favor of the respondent could return a verdict in the respondent's favor." *Reza v. Pearce*, 806 F.3d 497, 505 (9th Cir. 2015).  On the other hand, where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial and summary judgment is appropriate.  *Zetwick*, 850 F.3d 436 at 441.

The moving party bears the initial burden of showing there is no genuine issue of material fact.  *Martin v. Mowery (In re Mowery)*, 591 B.R. 1, 5 (Bankr. D. Idaho 2018) (citing *Esposito v. Noyes (In re Lake Country Invs.)*, 255 B.R. 588, 597 (Bankr. D. Idaho 2000) (citing *Margolis v. Ryan*, 140 F.3d 850, 852 (9th Cir. 1998))).  If the non-moving party bears the ultimate burden of proof on an element at trial, the burden remains with that party to make a showing sufficient to establish the existence of that element in order to survive a motion for summary judgment.  *Id*.

**UNDISPUTED FACTS**

On March 19, 2020, Defendant applied for unemployment benefits with the Plaintiff. Dec. of Carrie Hale, Doc. No. 39 at ¶ 4 and Ex. A.  As a result of such application, Defendant received benefits for the dates ending April 25, 2020 through March 6, 2021.  *Id.* at ¶ 5.  The application contains a fraud warning which provides, in relevant part,

> Misrepresentation in connection with unemployment benefits has serious consequences. Under Idaho law it is a felony to knowingly make a false statement or to willfully fail to disclose a material fact in order to obtain or increase unemployment benefits …. Whether or not criminal charges are filed, you may be required to repay Idaho Department of Labor the total amount of unemployment insurance benefits received, to include federal taxes withheld or child support paid on your behalf, accrued interest, and civil penalties of up to 100% of any overpayment of benefits.

MEMORANDUM OF OF DECISION - 3

> \* \* \* \* \*
>
> Idaho Department of Labor will verify the information provided in this claim application to assure its accuracy, and will collect overpayments by all means available under Idaho law, including, but not limited to, wage garnishments for both the claimant and spouse, bank account seizures, state and federal tax refund seizures, and liens filed on all real and personal property.

*Id.* at Ex. A.  Completion of the application required Defendant to sign, under penalty of perjury, affirming that all information provided in connection with the application was true, correct, and complete.  *Id.*

On March 14, 2021, Defendant reapplied for unemployment benefits for the period of March 14, 2021 through March 12, 2022, resulting in receipt of benefits for the weeks ending April 3, 2021 through October 2, 2021.  *Id.* at ¶¶ 8–9 & Ex. B.  The same fraud warning and affirmation under penalty of perjury applied to this application.

As described in the application, the Plaintiff sought to verify the information Defendant provided.  Plaintiff's investigator, Jennifer Roop, conducted an audit which indicated that Defendant had underreported his earnings for his work at Custom Draft Solutions LLC, Fork in the Road, Idaho Wine Merchant, Inc., John's Alley, and BlackKat Productions during the period between April 11, 2020 and October 2, 2021.  *Id.* at ¶¶ 13–14 and Exs. C, D, & E.  At the conclusion of the audit, on September 19, 2022, Plaintiff sent Defendant a letter referencing the earnings he reported and those reported by his employers and asked him to explain the discrepancy and supply any documentation to support the amounts he reported or to otherwise explain why he misreported his earnings.  *Id*. at Ex. F.  The deadline to respond was September 29, 2022.  *Id.*  Defendant did not reply to the letter.  Ms. Roop concluded that Defendant

MEMORANDUM OF OF DECISION - 4

provided false information to obtain unemployment insurance benefit for which he was not eligible.[2] *Id.* at Ex. G.

Following the investigation and Ms. Roop's conclusions, on October 5, 2022, Plaintiff mailed an Eligibility Determination Unemployment Insurance Claim ("Eligibility Determination") to the address supplied by Defendant to Plaintiff. *Id.* at Ex. H. The Eligibility Determination informed Defendant that the evidence indicated he "willfully made a false statement or failed to report a material fact on this claim." *Id.* It concluded that Defendant "provided false information in an attempt to obtain unemployment insurance benefits for which he was not eligible." *Id.* At the same time, Plaintiff mailed to Defendant an Overpayment Determination, which provided a detailed explanation of the overpayments by week, demonstrating a total overpayment of $14,147, and a corresponding penalty of $3,396.25 ("Determination"). *Id.* at Ex. I.

Both the Eligibility Determination and the Determination gave Defendant a deadline of October 19, 2022 to file a protest. When he did not file a protest, on November 22, 2022, Plaintiff filed a lien against Defendant pursuant to Idaho Code § 72-1360 in the amount of $17,243.25. *Id.* at Ex. J. A copy of the Notice of Lien Filing and Demand for Payment was mailed to Defendant the following day. Notably, all documents related to the overpayment, including the Determination and notice of the lien, were returned to Plaintiff by the United States Postal Service and marked as "Not Deliverable as Addressed and Unable to Forward." *Id.* at Ex. K. Plaintiff later learned that Defendant had not lived at the address on file since July 2022, and

---

[2] Plaintiff did not consider those weeks where Defendant underreported earnings in amounts less than $50, but simply corrected the earnings. *Id.* at Ex. G.

MEMORANDUM OF OF DECISION - 5

had been homeless since that time.  *Id.*  Defendant made no effort to update his housing circumstances with Plaintiff, nor did Plaintiff attempt to reach Defendant by email or telephone.

Defendant contacted Plaintiff on October 14, 2022 and learned of the Determination and was provided information about appealing the decision.  *Id.*  He filed his appeal via email roughly six week later on November 30, 2022.  *Id.* at Ex. K.  The Plaintiff's appeals bureau conducted a telephonic hearing on December 20, 2022 at which Defendant appeared and testified.  A decision was issued the following day and held that the appeal was untimely, depriving the appeals examiner of jurisdiction over the appeal.  *Id.* at Ex. K.

Defendant filed a chapter 7 bankruptcy petition on September 14, 2023, and on December 15, 2023, Plaintiff commenced this adversary proceeding seeking a determination that Plaintiff's debt will not be discharged in Defendant's bankruptcy case.[3]  Plaintiff initially sought a default judgment, but that was denied because Defendant filed an answer to the complaint.  Doc. Nos. 11 & 12.  Defendant's answer addressed the amount of overpayment, which he believes was incorrectly calculated, as well as his lack of notice about the proceedings conducted by the Plaintiff due to his homelessness.

On March 25, 2024, Plaintiff served interrogatories and requests for production and admission on Defendant.  Dec. of Rafael A. Icaza, Doc. No. 26 at ¶ 3.  Defendant did not respond.  *Id.* at ¶ 6.

---

[3] At the time the adversary complaint was filed, the amount due and owing by Defendant was $15,560.23.  Moreover, Defendant had repaid $2,885.71, from which $902.69 was applied to interest and $1,983.02 to penalty.  In addition, Plaintiff wrote off $1,200 of the debt pursuant to IDAPA 09.01.30.700.  *Id.* at ¶ 28.

MEMORANDUM OF OF DECISION - 6

On June 10, 2024, Plaintiff filed the instant motion for summary judgment. Defendant filed a letter in response to the motion on July 24, 2024, through which he again disputed the earnings figures used by Plaintiff in determining the amount of overpayment. Doc. No. 34.

**ANALYSIS**

Plaintiff bears the burden of establishing the debt arising from the overpayment of unemployment benefits is nondischargeable pursuant to § 523(a)(2)(A) by a preponderance of the evidence. *Netwest Commc'ns Grp., Inc. v. Mills (In re Mills)*, 2008 WL 2787252, at *4 (Bankr. D. Idaho June 25, 2008) (citing *Grogan v. Garner*, 498 U.S. 279, 291 (1991)). In order to preserve a debtor's opportunity for a fresh start, the nondischargeability provisions of § 523(a) should generally be construed liberally in favor of the debtor. *Id.*

Initially, the Court will address Plaintiff's argument that, pursuant to Civil Rule 8(b)(6), Defendant has admitted most of the allegations contained in the complaint by failing to deny those specific factual allegations in his answer. However, as Defendant is proceeding pro se, the Court is required to liberally construe his pleadings and it is appropriate to treat Defendant's answer as a denial of all allegations contained within the complaint. As such, the Court will not treat any failure by Defendant to specifically deny the allegations in the complaint as admissions and Plaintiff will be required to establish the factual allegations contained in the complaint.

Turning to the issues presented in the summary judgment motion, Plaintiff asserts the doctrine of collateral estoppel applies to establish the necessary elements of § 523(a)(2)(A). Bankruptcy courts apply the preclusion law of the jurisdiction where the initial judgment was entered. *Herrera v. Scott (In re Scott)*, 588 B.R. 122, 131 (Bankr. D. Idaho 2018). Thus, because the Determination was entered by an Idaho administrative agency, Idaho law governs.

MEMORANDUM OF OF DECISION - 7

As a preliminary matter, Idaho state law limits the use of preclusion in regard to determinations and decisions relating to unemployment. Under Idaho Code § 72-1368(11)(b),

> No finding of fact or conclusion of law contained in a decision or determination rendered pursuant to this chapter by an appeals examiner, the industrial commission, a court, or any other person authorized to make such determinations shall have preclusive effect in any other action or proceeding, except proceedings that are brought (i) pursuant to this chapter, (ii) to collect unemployment insurance contributions, (iii) to recover overpayments of unemployment insurance benefits, or (iv) to challenge the constitutionality of provisions of this chapter or administrative proceedings under this chapter.

Two District of Idaho cases, *Layton v. Eagle Rock Timber, Inc.*, 2019 WL 1560876 (D. Idaho April 9, 2019) and *Estate of Curtis v. Costco Wholesale Corp.*, 2016 WL 11558228, at *2 (D. Idaho Jan. 29, 2016), have applied Idaho Code § 72-1368(11) to hold that prior decisions relating to unemployment have no preclusive effect on subsequent proceedings outside the four enumerated exceptions.

Thus, the Court must consider whether the instant proceeding falls within one of the enumerated exceptions—specifically, whether the current nondischargeability proceeding is an action "to recover overpayments of unemployment benefits." As noted by the Ninth Circuit in *Banks v. Gill Dist. Ctrs., Inc.*, 263 F.3d 862, 868 (9th Cir. 2001), there are often two distinct issues at play in a nondischargeability action: (1) the establishment of the debt; and (2) the nature of the debt. If the Court were to view the present nondischargeable action not as an action to recover unemployment overpayments, but as an action to determine the nature of a debt, arguably the present action would be outside the four exceptions enumerated in Idaho Code § 72-1368(11).

However, this Court, in *JA, LLC v. Sarria (In re Sarria)*, 606 B.R. 854, 861 (Bankr. D. Idaho 2019), considered a nondischargeability action an "action to recover" in the context of awarding attorney fees to the prevailing party under an Idaho law which provided fees in a civil

MEMORANDUM OF OF DECISION - 8

action to recover under a contract. Further, a finding of nondischargeability is a prerequisite to Plaintiff's ability to collect or recover on any unemployment overpayments. As such, the Court finds that the third exception under Idaho Code § 72-1368(11) applies and Plaintiff is not prevented from utilizing preclusion doctrines to establish its § 523(a)(2)(A) claim.

As Idaho Code § 72-1368(11)(b) does not prohibit preclusion, the Court must next consider whether Plaintiff can satisfy the requirements of collateral estoppel under Idaho law. The Idaho Supreme Court set forth the necessary elements of collateral estoppel in *Byrd v. Idaho State Bd. of Land Comm'rs*, 505 P.3d 708 (Idaho 2021). Collateral estoppel applies when:

> (1) the party against whom the earlier decision was asserted had a full and fair opportunity to litigate the issue decided in the earlier case; (2) the issue decided in the prior litigation was identical to the issue presented in the present action; (3) the issue sought to be precluded was actually decided in the prior litigation; (4) there was a final judgment on the merits in the prior litigation; and (5) the party against whom the issue is asserted was a party or in privity with a party to the litigation.

Further, as noted in *Platz v. State*, 303 P.3d 647 (Idaho Ct. App. 2013), Idaho law permits the application of collateral estoppel to administrative decisions.

First, there must have been a full and fair opportunity to litigate the issue during the prior litigation. As noted in *Scott*, 588 B.R. at 132, this is a relatively low standard, which only requires that an argument could have been made in a prior proceeding. Here, Defendant could have argued against the findings of the Determination by filing an appeal, but he did not do so in a timely manner. As such, there was a full and fair opportunity to litigate the issue and the first element is satisfied.

In this case, Defendant did not file any response when Plaintiff initially informed him of the perceived under reporting of wages, which led to the issuance of the Determination, which provided further opportunity for Defendant to respond. When he did not, the lien was filed. This

MEMORANDUM OF OF DECISION - 9

is procedurally akin to a default judgment. There is a question of whether a default judgment was "actually litigated" or a "final judgment on the merits" for purposes of collateral estoppel. The Idaho Supreme Court held in *Waller v. State Dept. of Health & Welfare*, 192 P.3d 1058, 1062 (Idaho 2008), that a default judgment is entitled to preclusive affect, absent evidence of fraud or collusion. In *Waller*, the defendant had a default judgment entered against him in a state court action which established he was the father of a child and required to pay child support. *Id.* Though the defendant had not answered the complaint or engaged with the litigation in any way, in a later state court action, the default judgment was given preclusive effect, and the defendant was not able to challenge the paternity determination. *Id.* Thus, Idaho law recognizes a default judgment as "actually litigated" and "on the merits." Here, while Defendant did not appeal or otherwise contest the Determination in a timely manner, the Plaintiff completed all necessary steps to obtain a lien. As such, under Idaho law, the Determination was litigated and constitutes a final judgment on the merits and thus the second and third elements are met.

As such, the proceedings conducted by the Plaintiff at the agency level conclusively determined the amount of the overpayment, and that issue is not before this Court. This finality is bolstered by the Defendant's failure to respond to the requests for admission in this Court, which have the effect of conclusively establishing that Defendant did not include all wages in his weekly reports to Plaintiff. *See* Doc. No. 26 at Ex. A; Civil Rule 36(a)(3). Rather, the issue before this Court, as discussed below, concerns whether this debt may be discharged in Defendant's bankruptcy case.

The next step to establish preclusion requires the issues in the current litigation to be identical to those previously decided. The Determination established that Defendant, pursuant to Idaho Code § 72-1366(12), "willfully made a false statement or willfully failed to report a

MEMORANDUM OF OF DECISION - 10

material fact" on his claim.  In particular, Defendant underreported earnings during relevant time periods, resulting in overpayment of benefits.

Idaho Code § 72-1366 addresses the conditions for eligibility to receive unemployment benefits as well as the penalties if applicants receive benefits to which they were not entitled. Relevant here, Idaho Code § 72-1366(12) provides:

> A claimant shall not be entitled to benefits for a period of fifty-two (52) weeks if it is determined that he has willfully made a false statement or willfully failed to report a material fact in order to obtain benefits. The period of disqualification shall commence the week the determination is issued. The claimant shall also be ineligible for waiting week credit and shall repay any sums received for any week for which the claimant received waiting week credit or benefits as a result of having willfully made a false statement or willfully failed to report a material fact. The claimant shall also be ineligible for waiting week credit or benefits for any week in which he owes the department an overpayment, civil penalty, or interest resulting from a determination that he willfully made a false statement or willfully failed to report a material fact.

Plaintiff now seeks a declaration that the debt from the unemployment overpayment is nondischargeable pursuant to § 523(a)(2)(A).  This Court set forth the necessary elements under § 523(a)(2)(A) in *Mowery,* 591 B.R. at 6 (citing *Ghomeshi v. Sabban (In re Sabban)*, 600 F.3d 1219, 1222 (9th Cir. 2010)).

To establish a claim is nondischargeable under § 523(a)(2)(A), a plaintiff must prove:

> (1) misrepresentation, fraudulent omission, or deceptive conduct by the debtor; (2) knowledge of the falsity or deceptiveness of his statement or conduct; (3) an intent to deceive; (4) justifiable reliance by the creditor on the debtor's statement or conduct; and (5) damage to the creditor proximately caused by its reliance on the debtor's statement or conduct.

In *Mowery*, the Court determined that a West Virginia criminal statute involving the obtaining of money, property and services by false pretenses was not identical to § 523(a)(2)(A) because the West Virginia statute did not require the element of harm.  Here, while the claims are similar, the Court finds there is not a complete identity of issues between § 523(a)(2)(A) and

MEMORANDUM OF OF DECISION - 11

Idaho Code § 72-1366(12). Both require a false statement or failure to report a material fact, as well as proof of knowledge and intent. However, Idaho Code § 72-1366(12) does not require a showing of justifiable reliance.

Plaintiff counters this issue two ways. First, it argues the fact it provided unemployment benefits to Defendant demonstrates such reliance. However, this neither demonstrates the reliance was justified, nor does it overcome the fact that justified reliance is simply not a part of Idaho Code § 72-1366(12), and therefore was not established by the proceedings conducted by Plaintiff. Second, one of the requests for admission served by Plaintiff on Defendant, to which he did not respond and therefore is admitted, reads as follows:

> REQUEST FOR ADMISSION NO. 20: Admit that [Plaintiff] reasonably relied upon the representations you made in your Claim Applications finished on March 19, 2020, and March 14, 2021, copies of which are attached to Exhibit A hereto, and in your weekly certifications, copies of which are also attached to Exhibit A hereto, in deciding to pay you unemployment insurance benefits.

Doc. No. 26 at Ex. A. A fact admitted in this way can be withdrawn upon motion. Civil Rule 36(b). Here, no motion has been made. However, even if Defendant admits by admission before this Court that Plaintiff reasonably relied on his representations, such admission does not demonstrate that Plaintiff actually justifiably relied on Defendant's weekly reporting for purposes of collateral estoppel. Therefore, like in *Mowery*, because the issues decided in the previous litigation did not include a necessary element of § 523(a)(2)(A), there is not a complete identity of issues, and the requisite elements of collateral estoppel are not met. As such, Plaintiff cannot use collateral estoppel to fully establish the nondischargeability of the debt.[4]

---

[4] There is no dispute that the fifth element of collateral estoppel, which requires that the party against whom the issue is asserted is the same as that in the prior litigation.

MEMORANDUM OF OF DECISION - 12

Despite this conclusion, the Court finds that the exhibits to the Declaration of Carrie Hale filed in connection with this summary judgment motion supply the requisite evidence of justifiable reliance in this case.

It is undisputed that Plaintiff paid Defendant unemployment benefits based on his weekly submissions. Therefore it is clear that Plaintiff actually relied on Defendant's documents. Indeed, Carrie Hale testified that the Plaintiff:

> relied upon the representations made by Mr. Tileh in his Claim Applications finished on March 19, 2020, and March 14, 2021, Exhibits A-B hereto, and upon Tileh's weekly certifications about whether he worked or had work earnings as referenced on the first column of Exh. C hereto (see ¶ 14 supra), in deciding whether to pay him unemployment insurance benefits."

Doc. No. 39 at ¶ 26. This statement alone, however, is insufficient to satisfy the requirements of § 523(a)(2)(A).

Rather, the standard for nondischargeability under § 523(a)(2)(A) is *justifiable* reliance by the Plaintiff on the Defendant's filings. There is abundant case law interpreting what this term means. Justifiable reliance looks to the "qualities and characteristics of the particular plaintiff, and the circumstances of the particular case, rather than of the application of a community standard of conduct to all cases." *Field v. Mans*, 516 U.S. 59, 71, 116 S. Ct. 437, 444, 133 L. Ed. 2d 351 (1995); *Shayman v. Aquino (In re Shayman)*, No. 1:21-AP-01025-MT, 2024 WL 1512894, at *9 (9th Cir. BAP Apr. 8, 2024) (a person may justifiably rely on a representation even if its falsity could have been discovered upon investigation); *Gout v. Garner (In re Garner)*, Case No. 21-08028-JMM, 2022 WL 3363681, at *4 (Bankr. D. Idaho Aug. 12, 2022) (creditor did not demonstrate reliance was justified due to prior experience with debtor's untrustworthiness); *Fetty v. DL Carlson Enters., Inc. (In re Carlson)*, 426 B.R. 840, 855 (Bankr. D. Idaho 2010).

MEMORANDUM OF OF DECISION - 13

The standard of "justifiable reliance" is less stringent than "reasonable reliance," which is objective. *Romesh Japra, M.D., F.A.C.C., Inc v. Apte (In re Apte)*, 180 B.R. 223, 229 (9th Cir. BAP 1995), *aff'd*, 96 F.3d 1319 (9th Cir. 1996) ("Typically, then, if reliance is found to be reasonable, it also meets the lesser, subjective standard of justifiable reliance."). Nevertheless, this does not mean that blind reliance is sufficient. *Citibank (South Dakota), N.A. v. Eashai (In re Eashai)*, 87 F.3d 1082, 1090-91 (9th Cir. 1996) ("Although one cannot close his eyes and blindly rely, mere negligence in failing to discover an intentional misrepresentation is no defense to fraud.").

Thus, when justifiable reliance is the standard, the particulars of the parties and the circumstances matter. In this case, it is undisputed that Defendant applied for unemployment benefits from Plaintiff. The application form had clear warnings against filing fraudulent materials. Specifically, it provided that "it is a felony to knowingly make a false statement or to willfully fail to disclose a material fact in order to obtain or increase unemployment benefits" and warned of potential prison time for each false report. Next, it cautioned Defendant of the very possibility he faces here – that of the requirement to repay overpayments with interest and penalties added, as well as disqualification for receiving future benefits for a minimum of one year. Finally, the application required Defendant to acknowledge that his certification was "made under penalty of perjury under state and federal law."

Given the very serious consequences of willingly providing false, incomplete, or inaccurate information, and Defendant's acknowledgment that he understood those consequences, the Court may conclude as a matter of law that Plaintiff justifiably relied on Defendant's submissions, including weekly certification filings.

MEMORANDUM OF OF DECISION - 14

**CONCLUSION**

Because the undisputed facts demonstrate that all elements of nondischargeability under § 523(a)(2)(A) have been satisfied, the Court concludes as a matter of law that the debt attributable to the overpayments Defendant received from Plaintiff are nondischargeable in Defendant's bankruptcy case. Accordingly, the motion for summary judgment is granted and the trial scheduled for November 15, 2024 will be vacated. Plaintiff shall prepare and submit a proposed judgment of nondischargeability.

A separate order granting Plaintiff's motion for summary judgment will be entered.

DATED: September 6, 2024



HON. BENJAMIN P. HURSH
U. S. BANKRUPTCY JUDGE
SITTING BY DESIGNATION
U.S. COURTS, DISTRICT OF IDAHO